UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL J. D'AMICO PLUMBING &
HEATING CO., INC.,

                Plaintiff,                DECISION AND ORDER

   -v-

                                             07-CV-6296 CJS

LOCAL UNION NO. 13 OF THE UNITED
ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND
PIPE FITTING INDUSTRY OF THE
UNITED STATES AND CANADA,

                Defendants.
_____

APPEARANCES

For Plaintiff:                  Anthony J. Adams, Jr., Esq.
                                 Gates & Adams, P.C.
                                 28 East Main Street, Suite 600
                                 Rochester, New York 14614

For Defendants:            Michael T. Harren, Esq.
                                 Chamberlain D'Amanda Oppenheimer & Greenfield LLP
                                 1600 Crossroads Bldg., 2 State Street
                                 Rochester, New York 14614

INTRODUCTION

     In this action Plaintiff seeks payment of money allegedly owed to it pursuant to a "Letter of Understanding" between itself and the Defendant. Now before the Court is Defendant's motion [#5] to dismiss the Complaint for failure to state a claim or, alternatively, for failure to join an indispensable party. For the reasons that follow, the application is granted.

BACKGROUND

Unless otherwise noted, the following background facts are taken from Plaintiff's Complaint [#1], the "Letter of Understanding" and the Parties' Collective Bargaining Agreement ("CBA").[1] At all relevant times, Plaintiff Daniel J. D'Amico Plumbing & Heating Co., Inc. ("Plaintiff"), was a plumbing and heating contracting company that employed plumbers who were members of Defendant Local Union No. 13 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Defendant"). In that regard, Plaintiff belonged to the Mechanical Contractors Association of Rochester, Inc. ("MCA"), which, on behalf of Plaintiff and its other members, negotiated a CBA with Defendant. (Complaint [#1] ¶ 3; D'Amico Affidavit [#8], Ex. A). The CBA stated, in relevant part, that,

> [i]t is the intent and purpose of the parties hereto to provide for rates of pay, hours of work and conditions of employment to be observed by the parties, to the end that a continuous and harmonious labor relationship shall exist between the parties hereto, and the possibility of strikes, lockouts, boycotts and like practices may be thereby minimized.

(D'Amico Aff., Ex. A). The CBA included provisions regarding the payment of "fringe benefits" by employers to various funds administered by the Defendant union, including an "IAP Fund," which was shorthand for "Industry Advancement Program Fund." (D'Amico Aff., Ex. A, pp. 32-33). However, the CBA does not give any further information regarding the fund or the IAP. Finally, the CBA contains a dispute resolution clause, covering "questions relating to the interpretation of this Agreement, its enforcement, or its violation."

---

[1] As discussed further below, the Court finds that the Letter of Understanding and CBA may be considered because they are "integral" to Plaintiff's action. *See, Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

(*Id*. at p. 15). The provision requires that such issues first be submitted to a Joint Conference Board, comprised of representatives of MCA and Defendant, and that if the matter is not settled by the Joint Conference Board, that it be submitted for binding arbitration. (*Id*.). The actual language of the clause, in relevant part is as follows:

> Section 1: For the purpose of considering questions, relating to the interpretation of this Agreement, its enforcement, or its violation, there shall be a permanent Joint Conference Board consisting of five representatives appointed by the [MCA] and five representatives of Local #13.
> ***
> Section 2: In the event of any dispute with reference to this Agreement, such dispute shall be referred to settlement as follows: First the complaining party shall confer with the Business Manager of the Local Union and the Employer. Second, if the matter is not settled by this Conference, the complainant shall refer the matter to the Joint Conference Board, which shall consider the same on twenty-four hours notice by certified mail.
> ***
> Section 3: If the differences shall not have been adjusted by the above procedures within 48 hours, then either party may refer the matter to arbitration before an arbitrator selected through the rules of the Federal Mediation and Conciliation Service. The decision of the arbitrator shall be made within 30 days of the close of the hearing and a copy thereof served upon each party. The decision of the arbitrator shall be final and binding upon each party.

(D'Amico Aff., Ex. A, p. 15).

In addition to the CBA, the Court has before it the "Letter of Understanding UA Local 13 MCA Targeted Jobs Program," from which, it appears that the IAP was an association between MCA and Defendant, the actual title of which was "the UA Local 13/MCA Industry Advancement Program." (Complaint ¶ 3; D'Amico Aff., Ex. B, p.1). The Letter of Understanding states that MCA and Defendant agreed "to establish a targeted jobs program as a separate and distinct fund under the auspices of the UA Local 13/MCA Industry Advancement Program." (D'Amico Aff., Ex. B, p.1). Such program was to be

funded "by diverting $.91 from the [fringe benefit] contribution currently paid to the IAP Fund," and was to "be operated in accordance with the Labor Management Act § 302(c)(9)." (*Id.*). The Letter of Understanding further states that the IAP's "Trustees" would serve as "an industry-wide management committee," that would "identify those types of construction projects or those particular projects where UA Local 13 and its participating employers are not competitive," and would "take reasonable steps to increase the competitiveness of participating employers." (*Id.*). Specifically, as mentioned above, the Letter of Understanding indicates that the parties would establish "a separate and distinct fund" of money, from which employers could receive a subsidy "at an agreed-upon rate for each hour of work performed under the terms of the collective bargaining agreement." (D'Amico Aff., Ex. B, p. 2). To receive the subsidy, employers were required to submit weekly reports of hours worked by journeyman union members under the CBA, and, "upon verification" of those hours, "the targeted job fund shall reimburse the employer monthly in an amount equal to the number of hours actually worked multiplied by the applicable subsidy." (*Id.*). The Letter of Understanding does not contain a dispute resolution provision or an arbitration clause.

In connection with the targeted job program, Plaintiff applied for subsidy payments, for hours worked on fifteen separate projects, in the amount of $39,254.50. (Complaint ¶ 6). However, the claim was denied. Subsequently, on June 14, 2007, Plaintiff commenced the instant action pursuant to 29 U.S.C. § 185, which, in relevant part, provides that the federal courts have subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry

affecting commerce."29 U.S.C. § 185(a).  The Complaint alleges, in relevant part, that "Defendant's refusal to pay wage subsidies pursuant to the Job Targeting Program was wrongful and breached defendant's contractual obligations to the plaintiff." (Complaint ¶ 8).

Defendant has moved to dismiss the Complaint pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure ("FRCP").  With regard to the 12(b)(6) application, Defendant alleges that the Complaint fails to state a claim for two reasons: 1) Plaintiff is required to arbitrate its disputes, pursuant to the arbitration clause in the CBA; and 2) any such arbitration proceeding is time-barred.  As for the 12(b)(7) application, Defendant contends that the action should be dismissed because Plaintiff has not joined the "UA Local 13-Mechanical Contractors Association of Rochester Industry-wide Competitiveness Committee" ("Competitiveness Committee") as a defendant, and that the Competitiveness Committee is an indispensable party.  Plaintiff opposes Defendant's motion in all respects.  On September 4, 2008, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

As recently clarified by the U.S. Supreme Court, the standard to be applied to a 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief

> above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, No. 05-1126,  — U.S. —, 127 S.Ct. 1955, 1964-65 (May 21, 2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)   When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

> In that regard, it is also well settled that,
>
> [i]n considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, 'matters outside the pleading are presented to and not excluded by the court,' the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b); *see, e.g., Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 154-55 (2d Cir.2006) (" *Global* "). In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact. *See, e.g., Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999).
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by

> reference are deemed part of the pleading and may be considered. *See, e.g., Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir.1998), *cert. denied*, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). In addition, even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion. *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (" Cortec") (emphases added), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *see, e.g., Global*, 458 F.3d at 156.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Where such an integral document is an agreement, the Court is "not constrained to accept the allegations of the complaint in respect of the construction of the agreement, although . . . [the Court] will strive to resolve any contractual ambiguities in [the plaintiff's] favor." *International Audiotext Network, Inc. v. American Tel. And Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

At the outset, the Court finds that the CBA and Letter of Understanding, both of which are mentioned in the Complaint, are integral to the Complaint and may be considered by the Court in resolving the 12(b)(6) application. The Court will now consider whether the complaint must be dismissed due to Plaintiff's failure to comply with the CBA's dispute resolution/arbitration provision. In that regard, Plaintiff admits that it did not comply with the provision, but maintains that it was not required to do so, since it is suing pursuant to the Letter of Understanding, which contains no such provision. The applicable law in this regard appears settled:

> In *Louis Dreyfus Negoce [S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir.2001)], the Second Circuit established a three-part inquiry for determining whether a particular dispute falls within the scope of an agreement's arbitration clause. *See id*. at 224. First, a court must classify the arbitration clause as broad or narrow. Second, if the clause is narrow, "the court must determine whether the dispute is over an issue that 'is on its face

> within the purview of the clause,' or over a collateral issue[2] that is somehow connected to the main agreement that contains the arbitration clause." *Id*. (*quoting Rochdale Vill., Inc. v. Public Serv. Employees Union*, 605 F.2d 1290, 1295 (2d Cir.1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." *Id*. Third, if the arbitration clause is broad, " 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under 'it'." *Id*. (*quoting Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 23 (2d Cir.1995)).
>
> \*\*\*
>
> An arbitration clause is broad if "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause." *Id*. at 225. It is narrow if the language indicates that "arbitration was designed to play a more limited role in any future disputes." *Id*.

*Ferrari N. Am., Inc. v. Ogner Motor Cars, Inc.*, No. 02 Civ.7720 SAS, 2003 WL 102839 at \*2-3 (S.D.N.Y. Jan. 9, 2003).

In the instant case, the Court finds that the CBA's arbitration provision is broad and, accordingly, there is a presumption that disputes arising under the related Letter of Understanding must be arbitrated.[3] Plaintiff has not rebutted this presumption. To the contrary, the Court finds that Plaintiff's claim in fact implicates the parties' rights and obligations under the CBA. Consequently, the Court will grant Defendant's application to dismiss based upon the CBA's arbitration clause. With regard to Defendant's additional argument that any arbitration proceeding at this juncture would be time-barred, the Court leaves that issue to be resolved by an arbitrator. *See*, *Rochester Tel. Corp. v.*

---

[2]See, *Ferrari North America, Inc. v. Ogner Motor Cars, Inc.*, No. 02 Civ.7720 SAS, 2003 WL 102839 at \*3 (S.D.N.Y. Jan. 9, 2003) ("A collateral agreement is 'a separate side agreement, connected with the principal contract which contains the arbitration clause.'") (*quoting Louis Dreyfus Negoce*, 252 F.3d at 228

[3]During oral argument, Plaintiff's counsel acknowledged that the CBA arbitration provision is a "fairly broad arbitration clause."

*Communication Workers of Am.*, 340 F.2d 237, 238 (2d Cir. 1965) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.") (*quoting John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918 (1964).[4]

Since the Court finds that the action must be dismissed, it need not address Defendant's remaining arguments.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss [#5] is granted, and this action is dismissed.

SO ORDERED.

Dated:    September 8, 2008
          Rochester, New York

                                    ENTER:


                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge

---

[4] At oral argument, Defendant's counsel acknowledged that Defendant's statute of limitations argument should be considered by an arbitrator.